FILED
2021 Jul-02 PM 12:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LAUREN GILBREATH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action Number |
| **v.** | ) **2:20-cv-00487-AKK** |
| | ) |
| **COMMISSIONER OF** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | |

## MEMORANDUM OPINION

Lauren Gilbreath brings this action under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that his decision, which has become that of the Commissioner, is supported by substantial evidence. The court, therefore, affirms the decision denying benefits.

**I.**

Gilbreath worked as a welder at an automotive plant and held several other jobs before she stopped working at age twenty-nine due to her alleged disability. R. 56. *See generally* R. 43, 45, 47-8, 56-7, and 65-66. Gilbreath applied for disability insurance benefits and supplemental security income based on learning delays, manic depression, anxiety, and bipolar disorder, alleging a disability onset date of

September 10, 2017. R. 129-30. After the SSA denied Gilbreath's application, R. 141, 146, she requested and received a formal hearing before an ALJ, R. 153. The ALJ subsequently denied Gilbreath's claim. R. 30. The SSA Appeals Council declined to review the ALJ's decision, rendering it the final decision of the Commissioner. R. 1. Gilbreath then filed this action for judicial review under 42 U.S.C. § 405(g). Doc. 17.

## II.

The court's review is limited to determining whether there is substantial evidence to support the ALJ's decision, and whether the ALJ applied "the correct legal standards[.]" *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988). Under 42 U.S.C. § 405(g) and 1383 (c), "the [Commissioner's] findings are conclusive if supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). As a result, the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary; rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). As the Supreme Court recently emphasized, this burden "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "substantial evidence is more than a scintilla, but less than a preponderance: [i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin v. Sullivan*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If substantial evidence supports the ALJ's decision, then the court must affirm even if the evidence preponderates against the decision. *See id.* However, this "does not yield automatic affirmance" despite the limited scope of judicial review, and reviewing courts are not to act as mere "automatons." *Thomas v. Comm'r of Soc. Sec. Admin.*, No. 2:19-CV-02085-AKK, 2020 WL 7352571, at *1 (N.D. Ala. Dec. 15, 2020) (quoting *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Bloodsworth*, 703 F.2d at 1239).

**III.**

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3). Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

> (1) whether the claimant is currently unemployed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the impairment meets or equals one listed by the Commissioner;
>
> (4) whether the claimant is unable to perform his or her past work; and
>
> (5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

Claimants, such as Gilbreath, alleging disability based on their subjective pain or symptoms must meet additional criteria. Specifically, the Eleventh Circuit applies a three-part "pain standard" when a claimant seeks to establish disability through her

4

own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Under that standard, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). But, medical evidence of pain or its intensity is not required. *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Thus, if a claimant testifies to disabling pain and satisfies the three-part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony. *Thomas*, No. 2:19-CV-02085-AKK, 2020 WL 7352571, at *2.

An ALJ cannot discredit a claimant's testimony without articulating "explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561. If the ALJ does not provide reasons for rejecting subjective pain testimony, then the ALJ is deemed as a matter of law to have accepted the testimony as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). "Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence." *Id.* Therefore, if the ALJ either fails to articulate reasons for refusing to credit the claimant's pain

testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the claimant's pain testimony and render a finding of disability. *Id.*

## IV.

In this case, the ALJ decided in step one that although Gilbreath had engaged in work activities after her alleged onset date, the work "does not rise to the level of substantial gainful activity." R. 20. In step two, the ALJ found that Gilbreath had severe impairments of major depressive disorder and bipolar disorder. R. 21. The ALJ found in step three that Gilbreath's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments. *Id.* Although the ALJ answered question three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to the next step. The ALJ determined that Gilbreath "has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels" but with some non-exertional limitations, including that she can "complete simple routine work tasks with non-confrontational supervision," "maintain superficial work relationships with others," and "adapt to a routine work setting with infrequent changes," and that she "needs to avoid fast-paced assembly line work with strict quotas." R. 23. Based on that RFC and the testimony of a vocational expert ("VE"), the ALJ concluded in step four that Gilbreath could work in her past occupation as an auto assembly production welder.

R. 28. Alternatively, relying on the VE's testimony, the ALJ found that based on Gilbreath's RFC, age, education, and work experience, other jobs exist in the national economy that Gilbreath can perform, including industrial sweeper clean, laundry worker, and hospital cleaner. R. 28-29. Therefore, the ALJ found that Gilbreath "has not been under a disability, as defined in the [] Act" from the alleged onset date through the date of the ALJ's decision. R. 29.

## V.

Gilbreath contends that the ALJ erred by: (1) failing to properly consider her subjective testimony regarding the limiting effects of her impairments, (2) failing to consider her homelessness and its impact on her ability to remain compliant with her prescribed medication, and (3) not posing a hypothetical question to the VE that wholly encompassed her limitations. Doc. 17 at 15-16. None of these contentions, which the court addresses in order, are persuasive.

## A.

Gilbreath's first claim of alleged error is that the ALJ failed to consider her subjective testimony. At issue here is Gilbreath's testimony that there are days when she lacks the motivation to take care of herself by cooking meals or attending to her hygiene; that she has a fear of people, judgment, and going outside of her home; that she has racing thoughts and is "always on edge;" and has a hard time getting along with people. R. 49-51. According to Gilbreath, those issues have worsened as she

7

has gotten older, and she hears voices several times a week "like someone is out to get her" even though no one is around. R. 50-51. Gilbreath further testified that her medications for her depression make her "very fatigued" most or all of the day, which requires her to nap for one to two hours every afternoon, R. 52-53; that she needs help with her laundry and dishes, and for someone to remind her to take her medicine and perform personal hygiene, R. 286; and that due to her depression and bipolar disorder, she is unable to keep up with the production or pace at work and cannot keep a job. *See* R. 55-57. Contrary to Gilbreath's contention, however, the ALJ considered her testimony, and applied the correct legal standard when he found that although the "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Gilbreath's statements regarding the "intensity, persistence and limiting effects of [the] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 24.

In reaching this decision, the ALJ correctly summarized Gilbreath's relevant medical records and function reports and stated why he found both inconsistent with Gilbreath's testimony. *See* R. at 23-28. In particular, Gilbreath's own function reports show (1) that she leaves her home or shelter daily and either walks, rides in a car, or takes public transportation to her destination, R. 287; (2) that she goes shopping for personal hygiene products or clothing twice a month, *id.*; and (3) that she talks on the phone daily and sometimes visits a friend during the day, R. 284,

288. As the ALJ noted, these self-reported activities belie Gilbreath's testimony that she does not get along with others and is afraid to leave her house or shelter. *See* R. 50-51.

Gilbreath's medical records also provide substantial evidence to support the ALJ's decision. For example, at a visit with a therapist at CED Mental Health Center on September 19, 2017 (nine days after Gilbreath's alleged onset date), Gilbreath reported that although she was still depressed and had anxiety and panic attacks, she was able to work and "push[] through." R. 481. And, contrary to Gilbreath's testimony that she must take a nap each afternoon due to side effects from her medication, R. 52-53, during a visit to the Center in September 2019, she denied experiencing any side effects from her medication, including "overt sedation," R. 75. In addition, as the ALJ noted, Gilbreath's medical records reflect that her medications sometimes alleviated symptoms of her depression and bipolar disorder. R. 443, 482, 487, 489, 569, 597-98, 779. And, when Gilbreath reported compliance with her medications, her psychiatric symptoms were mild or unremarkable. *See* R. 762-63, 769-70, 775-76. Moreover, even when Gilbreath was not compliant with her medications, her medical records indicate that she was cooperative and alert and oriented at medical appointments; her thought content was negative for suicidal ideations, hallucinations, paranoia, and delusions; and she had a fair attention span

and cognitive function and thought processes within normal limits. R. 370-71, 479-80, 485, 489-90, 569-71; *see also* R. 492, 496, 498-99.

To close, the ALJ in fact considered her subjective testimony. However, the ALJ found that Gilbreath's own function reports and the medical records undermined her testimony. There is no error because substantial evidence supports the ALJ's finding that Gilbreath's depression and bipolar disorder were not as disabling as she claimed.

**B.**

Gilbreath also contends that the ALJ failed to properly consider her homelessness and poverty. Doc. 17 at 15. In particular, Gilbreath suggests that the ALJ should have considered the impact her homelessness and poverty has on her mental health and her ability to take her prescribed medication. *See id.* at 16. This contention is also unavailing.

The ALJ acknowledged Gilbreath's homelessness in reaching his decision, noting that Gilbreath "reported more anxiety and panic attacks that may have been related to her situation of homelessness and lack of income." R. 25. However, the ALJ rejected the contention that Gilbreath's anxiety was disabling, finding that Gilbreath's medical records reflect that "her psychiatric findings were essentially unremarkable" when Gilbreath took her medications as prescribed. *See* R. 27; *see also* R. 762-63, 769-70, 775-76. The ALJ also considered the periods when Gilbreath

10

was not taking her medications,[1] and found that the medical records indicate that Gilbreath did not have disabling limitations even when she was not taking her medication as prescribed. *See* R. 23-28, 479-80, 485, 489-90, 569-71.

Generally, "a claimant's 'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,' and 'poverty excuses noncompliance.'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)(quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988)). Poverty does not help here, however, because Gilbreath failed to cite anything in her medical records to indicate that she had disabling limitations when she could not take her prescribed medications. *See* doc. 17. Moreover, the ALJ's decision was not based on a finding of noncompliance. *See* R. 23-28. Thus, Gilbreath has not shown that the ALJ erred by failing to properly consider the impact her poverty and homelessness had on her ability to take her prescribed medications. *See Ellison*, 355 F.3d at 1275.

## C.

Finally, Gilbreath contends that the ALJ failed to pose a hypothetical question to the VE that wholly encompassed her limitations. Allegedly, the ALJ erred by not properly considering evidence that she may miss two days of work per month. *See* Doc. 17 at 15. Dr. Gloria Roque, a State Agency psychologist who reviewed

---

[1] Gilbreath either did not comply or ran out of her medication, and on at least one occasion, she could not afford her medications. *See* R. 446, 478, 489-90, 561, 565, 569, 572, 574, 730, 779, 781.

11

Gilbreath's records, opined that Gilbreath may have to miss one or two days of work per month due to her psychiatric symptoms. R. 138. And, the VE testified that there are no jobs in the national economy that a person with Gilbreath's vocation profile and RFC could perform if that individual would miss two days a month on a consistent basis. R. 69-70. In light of this evidence, and because the ALJ gave significant weight to the rest of Dr. Roque's opinion, Gilbreath contends that the ALJ should have found her disabled, or at least should have asked the VE if there was a "difference between having to miss 'one to two days' of work per month for mental illness, and 'consistently missing two days of work per month' for mental illness." Doc. 17 at 15. This contention is unavailing because Dr. Roque's opinion that Gilbreath "<u>may be expected</u> to miss 1 or 2 days of work per month," R. 138 (emphasis added), is speculative. As such, the ALJ did not have to give any weight to the opinion. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)).

## VI.

The ALJ used the correct legal standard and substantial evidence supports his decision. The Commissioner's final decision is therefore due to be affirmed. The court will issue a separate order in accordance with this opinion.

**DONE** the 2nd day of July, 2021.

                                            _____
                                                **ABDUL K. KALLON**
                                        UNITED STATES DISTRICT JUDGE